UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| CONSTANCE CATHCART, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:19 CV 540 ACL |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

Plaintiff Constance Cathcart brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

An Administrative Law Judge ("ALJ") found that, despite Cathcart's severe impairments, she was not disabled as she had the residual functional capacity ("RFC") to perform past relevant work.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

For the following reasons, the decision of the Commissioner will be affirmed.

**I. Procedural History**

Cathcart filed her application for benefits on February 19, 2015, claiming that she became unable to work on December 3, 2014. (Tr. 178-79.) In her Disability Report, Cathcart alleged

disability due to a left knee total replacement, right knee arthritis, bilateral shoulder pain, back pain, arthritis, bilateral foot pain, neck and shoulder pain, and gout. (Tr. 258.) Cathcart was 55 years of age on her alleged onset of disability date. Her application was denied initially. (Tr. 75-79.) Cathcart's claim was denied by an ALJ on June 22, 2018. (Tr. 16-22.) On January 22, 2019, the Appeals Council denied Cathcart's claim for review. (Tr. 1-6.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In this action, Cathcart argues that the "ALJ's RFC is not supported by substantial evidence." (Doc. 19 at p. 3.) She also contends that the ALJ's "credibility analysis is flawed." *Id.* at p. 6.

## II. The ALJ's Determination

The ALJ first found that Cathcart met the insured status requirements of the Social Security Act on December 3, 2014, and remained insured through the date of the decision. (Tr. 18.) Cathcart had not engaged in substantial gainful activity since December 2, 2014. *Id.* The ALJ next found that Cathcart had the following severe impairments: osteoarthritis, degenerative disc disease, a history of left knee replacement, and a history of left rotator cuff tear and repair. *Id.* The ALJ found that Cathcart did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. *Id.*

As to Cathcart's RFC, the ALJ stated:

> Since December 3, 2014, the claimant has had the residual functional capacity to perform sedentary work as that term is defined in 20 CFR 404.1567(a), but she has been unable to: crouch, kneel crawl or climb ramps, stairs, ladders, ropes or scaffolds; stoop more than occasionally; push or pull more than

occasionally with her left (non-dominant) arm; reach overhead with her left arm; operate foot controls with her right foot; have exposure to extreme cold, heat and humidity; have concentrated exposure to irritants such as fumes, odors, dust, gases or poorly ventilated areas; or have exposure to the operational control of moving machinery, unprotected heights and the use of hazardous machinery.

(Tr. 19.) The ALJ found that Cathcart was capable of performing past relevant work as an accountant. (Tr. 21.)

The ALJ therefore concluded that Cathcart has not been disabled within the meaning of the Social Security Act. (Tr. 22.)

The ALJ's final decision reads as follows:

> The claimant's application for a period of disability and disability insurance benefits, protectively filed on February 19, 2015, is denied. She has not been disabled under sections 216(i) and 223(d) of the Social Security Act.

*Id.*

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908

(8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the

record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted); s*ee also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B.  Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any kind of substantial gainful work which exists … in significant numbers in the region where such individual lives or in several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the

claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on his ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a

medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or his physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or his age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability

remains on the claimant.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## IV. Discussion

Cathcart argues that, in determining her RFC, the ALJ improperly evaluated the medical opinion evidence. Specifically, she contends that the ALJ erred in assigning weight to the opinion of Paul Maynard, D.O.; and in discrediting the opinions of nurse practitioner Laura Thomas and Vivek Manchanda, M.D. She further contends that the ALJ's credibility analysis is flawed.

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749-50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012-13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785-86 (8th Cir. 1997)). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011). Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value. *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012). Regardless of the decision the ALJ must still provide "good reasons" for the weight assigned the treating physician's opinion. 20 C.F.R § 404.1527(d)(2).

The ALJ must weigh each opinion by considering the following factors: the examining and treatment relationship between the claimant and the medical source, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment

relationship, whether the physician provides support for his findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty.  20 C.F.R. §§ 404.1527(c)(1)-(5), 416 .927(c)(1)-(5).

On December 10, 2015, the State agency sent a letter to Dr. Maynard, seeking his opinion regarding Cathcart's ability to stand and walk (Tr. 457.)   The letter noted that Cathcart underwent left total knee arthroplasty in December 2014, and arthrotomy of the left knee with excision of scar tissue/excision of neuroma in March 2015.  *Id.*   In response to the State agency's inquiry, Dr. Maynard expressed the opinion that Cathcart was capable of standing and walking without an assistive device for at least two hours in an eight-hour workday.  *Id.*

The ALJ indicated that he was assigning "considerable evidentiary weight" to Dr. Maynard's opinion, because it was consistent with the objective medical evidence.  (Tr. 19.) The ALJ noted that imaging results showed that Cathcart had only "mildly or moderately severe arthritis and disc degeneration, save for severe arthritis at the claimant's right great toe," and only mild neural foraminal stenosis at L4-5.  (Tr. 20, 342, 381, 436-37, 451, 726, 747-50, 941.) The ALJ further stated that musculoskeletal and neurological exam results obtained during the relevant period by Drs. Maynard and Manchanda and other treating sources do not indicate a disabling condition.  (Tr. 20.)   He explained that, despite the presence of some abnormalities on examination, Cathcart consistently demonstrated normal coordination, muscle tone, strength, reflexes, sensory ability, gait, and an ability to stand on her toes and heels.  (Tr. 20, 324-25, 332, 360-61, 366-67, 381, 387-89, 392-93, 395, 433, 444, 48, 498, 518, 534, 549, 551,-52, 571-72, 589-90, 608, 624-25, 642-43, 735-36, 793-811, 815-17, 821-23, 829-35, 842, 846, 849, 856, 860, 863, 866, 869, 885, 930-31, 958, 1024, 1048, 1071-72, 1076, 1081, 1085-86, 1093.)

The ALJ did not err in assigning significant weight to Dr. Maynard's opinion.  Dr. Maynard, as Cathcart's treating orthopedist, was in the best position to know Cathcart's restrictions following knee surgeries.  The ALJ cited to medical records of Dr. Maynard and others noting some abnormalities yet also often finding normal coordination, muscle tone, strength, reflexes, sensory ability, and gait.  The ALJ, therefore, provided sufficient reasons for assigning considerable weight to Dr. Maynard's opinion that Cathcart was capable of standing and walking at least two hours in an eight-hour workday.

The ALJ next discussed the opinions of Ms. Thomas, Dr. Manchanda, and Andrew Ninichuck, M.D.  First, the ALJ noted that "Laura Thomas (credentials not provided)" completed a Physical Residual Functional Capacity Assessment on October 20, 2016.  (Tr. 20.) Ms. Thomas expressed the opinion that Cathcart could lift less than ten pounds; could stand or walk less than two hours in an eight-hour workday; could sit less than six hours in an eight-hour workday; was limited in her abilities to push and pull with her upper and lower extremities; could never climb stairs or ladders, balance, kneel, crouch, or crawl; could occasionally stoop; was limited in her ability to reach and feel; should avoid all exposure to extreme heat, fumes or odors, and hazards; should avoid moderate exposure to extreme cold, humidity, and noise; and should avoid concentrated exposure to wetness.  (Tr. 459-62.)

In November 2017, Dr. Manchanda completed a Physical Residual Functional Capacity Questionnaire, in which he indicated he had been treating Cathcart for mid/low back pain and bilateral knee pain for approximately two years.  (Tr. 943.)  Dr. Manchanda expressed the opinion that Cathcart's pain constantly interferes with the attention and concentration needed for simple work tasks; she could not walk even one city block; could sit and stand for only ten minutes at a time and sit and stand for a total of less than two hours in an eight-hour workday;

must get up to walk for one to five minutes every eleven to fifteen minutes; requires the ability to shift positions at will; requires unscheduled breaks; must elevate her legs with prolonged sitting; must use a cane or other assistive device while standing or walking; can rarely lift even less than ten pounds; and would be absent from work as a result of her impairments more than four days a month. (Tr. 944-45.)

Finally, Dr. Ninichuck completed a Physical Residual Functional Capacity Questionnaire on February 20, 2018. (Tr. 1096-99.) Dr. Ninichuck listed Cathcart's symptoms as low back pain, bilateral knee pain, and bilateral shoulder pain. (Tr. 1096.) He expressed the opinion that Cathcart's pain constantly interferes with the attention and concentration needed for simple work tasks; she could not walk even one city block; could sit for only ten minutes at a time and sit for a total of less than two hours in an eight-hour workday; could stand for less than five minutes at a time and stand for a total of less than two hours in an eight-hour workday; must get up to walk for one to five minutes every six to ten minutes; requires the ability to shift positions at will; requires unscheduled breaks; must elevate her legs with prolonged sitting; must use a cane or other assistive device while standing or walking; can rarely lift even less than ten pounds; and would be absent from work as a result of her impairments more than four days a month. (Tr. 1097-98.)

The ALJ explained that he was assigning no weight to Ms. Thomas' opinions because the record does not show that Ms. Thomas ever treated or examined Cathcart. (Tr. 20.) Ms. Thomas also did not provide her credentials on the form she completed setting out her opinions. Cathcart points out that Ms. Thomas is a nurse practitioner in Dr. Manchanda's office, and that Dr. Manchanda signed off on Ms. Thomas' opinions. Cathcart contends that Ms. Thomas' opinions are supported by Dr. Manchanda's records.

The ALJ discussed Dr. Manchanda's November 2017 opinions. (Tr. 21.) He stated that the opinions were "not given much evidentiary weight because they are disproportionate to the objective medical evidence." *Id.* He continued that the opinions were "particularly inconsistent with the medical exam record's silence about manipulative and mental deficits, save for decreased shoulder range of motion, and its silence about edema except at the right foot on occasion." *Id.* The ALJ stated that Dr. Manchanda's opinion that Cathcart was completely unable to walk and unable to stand more then ten minutes at a time would suggest the need for a wheelchair, which was not shown by the medical record. *Id.* Finally, the ALJ stated that Dr. Manchanda's opinions that Cathcart's symptoms interfere with concentration, and that she requires unscheduled breaks and absences appear to be based on speculation. *Id.*

The ALJ provided sufficient reasons for according little weight to the opinions of Ms. Thomas and Dr. Manchanda. The fact that Ms. Thomas was a nurse practitioner working under Dr. Manchanda would not have affected the ALJ's decision as the ALJ found that Dr. Manchanda's opinions were inconsistent with his treatment notes. The ALJ provided a detailed explanation of why Dr. Manchanda's severely restrictive opinions were not supported by his own findings on examination. Similarly, Dr. Manchanda's treatment notes do not support Ms. Thomas' opinions.

With regard to Dr. Ninichuck, the ALJ noted that he had only examined Cathcart on one occasion when he provided his February 2018 opinions. (Tr. 20.) The ALJ stated that he was giving "little" weight to Dr. Ninichuck's opinions because they were based on this examination, which revealed normal musculoskeletal and neurological results other than lumbar spine tenderness. (Tr. 20, 1093.)

The ALJ did not err in assigning little weight to Dr. Ninichuck's opinions. Dr. Ninichuck's treatment notes documenting only lumbar spine tenderness are inconsistent with his opinion that Cathcart has disabling limitations.

It is the ALJ's responsibility to determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own description of her limitations. *Pearsall*, 274 F.3d at 1217. "It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). There is no requirement, however, that an RFC finding be supported by a specific medical opinion. *See Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012); *see also Martise*, 641 F.3d at 927 (An ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians."). Furthermore, "[e]ven though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox*, 495 F.3d at 619-20.

Here, the ALJ properly weighed the conflicting medical opinion evidence as discussed above. The ALJ also considered Cathcart's testimony in conjunction with the objective medical evidence and other factors in determining her RFC. Cathcart testified as follows regarding her limitations: she cannot reach well enough to put on a bra or coat; she cannot use a computer; she cannot stand more than ten minutes at a time; she cannot walk more than a short distance at one

time; she elevates her legs most of the day; she is unable to perform any household chores; and her pain interferes with her ability to concentrate and sleep. (Tr. 19, 54-59.)

The ALJ pointed out that, contrary to her hearing testimony, Cathcart reported in her Function Report that she was able to perform all of her personal care independently and was able to prepare meals. (Tr. 21, 274-75.) Most significantly, the ALJ noted that in December 2016, Cathcart reported to an investigator with the Cooperative Disability Investigator Unit that she had recently traveled to the Middle East for four weeks and that she visited more than eight countries while there. (Tr. 21, 471.) An ALJ may discount a claimant's subjective complaints if they are inconsistent with her activities of daily living. *See McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013). The ALJ concluded that Cathcart's symptoms have not been so intense or frequent as to be disabling (Tr. 21.)

Cathcart argues that the ALJ should not have discounted her credibility due to her vacation. She explains that she had to take a ship rather than a plane due to her inability to sit through a long flight. (Doc. 19 at p. 7.) Cathcart's mode of transportation, however, is irrelevant. The fact that Cathcart was able to travel for such a long period of time and visit eight countries is inconsistent with her allegations that she is unable to walk any distance without pain and must elevate her legs all day.

Based on the foregoing, the Court finds that the ALJ's RFC determination is supported by substantial evidence in the record as a whole. The ALJ acknowledged that Cathcart experiences pain and limitations from her impairments, but found that the record does not support that they are disabling. The ALJ restricted Cathcart to a very limited range of sedentary work. The ALJ, therefore, incorporated significant restrictions due to Cathcart's demonstrated difficulties resulting from her orthopedic impairments. The ALJ's RFC determination is

supported by the opinion of Dr. Maynard, and the findings on examination of Drs. Manchanda and Ninichuck. It is also consistent with Cathcart's ability to travel extensively after her alleged onset of disability. Cathcart failed to demonstrate the presence of greater limitations than those found by the ALJ.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

s/*Abbie Crites-Leoni*
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 31st day of March, 2020.